**In re WESTPARK VILLAGE APART-
MENTS OF DOUGLAS COUNTY,
LTD., Debtor.**

**Bankruptcy No. 2–90–00785, 58–1650190.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Nov. 18, 1991.

John Andrew Merkle, Denmead, Balck-
burn & Willard, Columbus, Ohio, for debt-
or.

Larry J. McClatchey, Robing Smith
Hoke, Emens, Hurd, Kegler & Ritter, Co.,
L.P.A., Columbus, Ohio, for the Limited
Partners.

Drew Parobak, Vorys, Sater, Seymour &
Pease, Columbus, Ohio, for American Char-
ter Federal Sav. & Loan Ass'n.

Jay Alix, Jay Alix & Associates, South-
field, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, for trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., Sp. Counsel to the Trustee of the Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on an objection to an amended plan of reorganization ("Plan") proposed by Chapter 11 debtor, Westpark Village Apartments of Douglas County, Ltd. ("Westpark"). The objection was filed on behalf of seven limited partners ("Limited Partners").

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) which this bankruptcy judge may hear and determine.

### I. *Facts*

Westpark is a Georgia limited partnership which owns real property in Douglas, Georgia upon which an apartment complex has been built. Cardinal Industries, Inc. ("CII"), also a Chapter 11 debtor before this Court, is the managing general partner of Westpark. Westpark has seven limited partners who collectively hold all thirty-five limited partnership units.

American Charter Federal Savings and Loan Association ("American Charter") is the present holder of a note executed by Westpark. Repayment of funds advanced pursuant to that note is secured by a mortgage against Westpark's real property and an assignment of rents and security agreement. American Charter consents to its treatment under the Plan and supports confirmation.

The Court held a confirmation hearing on September 10, 1991. At that time American Charter and the class of general unsecured trade claimants voted to accept the Plan. An impaired class of unsecured claimants holding claims for prepetition security deposits failed to cast any votes for or against the Plan. On October 15, 1991, however, Westpark modified the Plan to provide full payment to those claimants on the effective date of the Plan. Thus, the class of unsecured prepetition security deposit claimants is now unimpaired and, therefore, "conclusively presumed to have accepted the plan." 11 U.S.C. § 1126(f).

The Limited Partners, as members of a class of equity security holders, voted to reject the Plan. CII, also a member of that class, voted to accept the Plan. The Limited Partners further object to confirmation and assert that the Plan unfairly discriminates against the Limited Partners and that the Plan is not feasible.

### II. *Issues Presented For Determination*

The issues before the Court are:

1. Whether a plan may place general and limited partnership interests in the same class where such interests do not receive identical treatment, and

2. Whether Westpark's Plan is feasible under 11 U.S.C. § 1129(a)(11) and § 1123(a)(5)?

### III. *Discussion*

#### A. The Plan's Treatment Of Limited Partner Interests

The Plan places all ownership interests, general and limited, in Class 7. The treatment of Class 7 interests is as follows.

*Class 7 Interests.* Except as provided in Section 4.08 and in Article Five of the Plan, holders of Class 7 Interests shall receive no payments until the Property is

sold or refinanced. At that time, after payment of all Claims provided for in this Plan and after all payments provided for in the Partnership Agreement, distributions to the holders of Class 7 Interests shall be made in accordance with the Partnership Agreement, as amended and modified by this Plan.

Westpark's Plan proposes to amend the partnership agreement in several ways. First, it proposes to terminate all future "Extraordinary Obligations"[1] of the general partner, CII, and to release CII from any potential liability arising from its past failure to perform Extraordinary Obligations under the existing partnership agreement. The Plan also proposes to create a new category of limited partner interests ("Class A Units"). All existing limited partnership units will be redesignated as "Class B Units." However, each Limited Partner has the right to exchange his Class B Units in Westpark for a corresponding percentage of new Class A Units by the contribution of $2,000 for each unit so exchanged. Those new Class A Units will have greater voting power and earlier rights to receive allocations of profits or losses or other distributions of Westpark's property than will be available to holders of Class B Units. The Plan, therefore, favors those Limited Partners who choose to exchange their Class B Units for Class A Units. The Limited Partners unanimously rejected Westpark's Plan and have not elected to exchange their Class B Units for new Class A Units.

### B. The Classification Issue

The Limited Partners contend that the Plan provides for disparate treatment among the members of the class of equity security holders. While CII, as managing general partner, must contribute $3,000 to maintain its interest, it is released from all future Extraordinary Obligations and potential liability from past failure to perform such obligations. The Limited Partners contend that they receive nothing in exchange for this release and that they risk dilution of their respective interests in Westpark unless they "purchase" new Class A Units. The Limited Partners assert that such differing treatment among members of the same class amounts to "unfair discrimination."

▬ Although the Limited Partners frame the issue as "unfair discrimination," the question more accurately is whether the proposed plan provides the same treatment for all interests placed in the same class. Only after the Court finds that the proposed plan meets all requirements of § 1129(a) except that imposed by subsection (8), is a determination of "unfair discrimination" under § 1129(b) necessary. One requirement in 11 U.S.C. § 1129(a), found in subsection (a)(2), is that a proposed plan comply "with applicable provisions of this title [11 U.S.C. §§ 101 et seq]". Issues of classification or similarity of treatment under § 1122 are part of the Court's consideration in determining whether the plan has complied with all applicable provisions of Title 11. That issue, therefore, must be addressed under 11 U.S.C. § 1129(a)(1) prior to any consideration of "unfair discrimination" issues under the cram down provisions of § 1129(b).

---

**1.** The Plan defines "Extraordinary Obligations" as

"Extraordinary Obligations" shall mean the contractual obligations of Cardinal Industries or of any of its subsidiary corporations to provide financial support for the Debtor and its limited partners as specified or authorized in the Partnership Agreement, any other agreements, and/or in the offering materials used in connection with the offer and sale of the Debtor's securities to its limited partners. By way of illustration and not of limitation, such obligations shall include:

(1) any obligation to assure or guarantee the distribution to limited partners of a minimum or guaranteed amount of return in any year;
(2) any obligation to guarantee the rate of interest or dollar amount of debt service payable by the Debtor with respect to its mortgage indebtedness;
(3) any obligation to fund any operating deficit of the Debtor with contributions to the capital of the Debtor or with loans to the Debtor;
(4) any obligation to make loans to the Debtor; and
(5) any obligation to apply or refinance any portion of the indebtedness of the Debtor.

■ A Chapter 11 plan "may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The Limited Partners do not contend that their interests should not be placed in the same class with the interests of CII. Instead, the Limited Partners collectively argue that, as members of the same class as CII, their interests and CII's interest must be treated the same under the Plan. This assertion is accurate.

■ If holders of interests are placed in the same class, the plan must "provide the same treatment for each ... interest of a particular class unless the holder of a particular ... interest agrees to a less favorable treatment of such particular ... interest." 11 U.S.C. § 1123(a)(4). This provision is mandatory and, unless met, will bar confirmation. *See, also,* 11 U.S.C. § 1129(a)(1).

Westpark's Plan does not provide the same treatment for the interests of CII and the Limited Partners even though such interests are placed in the same class. The Plan proposes to release CII from performing certain obligations for Westpark. Generally, those obligations provide financial support for Westpark and, thus, necessarily benefit the Limited Partners. Under the Plan, the Limited Partners lose those benefits. Even though CII must contribute funds, the Limited Partners must also contribute new funds to maintain their proportionate interest in distributions of profits and losses or voting power. Thus, the Plan's proposed treatment of CII's interest is different from the proposed treatment of the Limited Partners' interests.

As general partner of Westpark, CII contends that the release of Extraordinary Obligations merely recognizes the reality that CII, an insolvent Chapter 11 debtor, cannot perform these obligations. That contention misses the issue before the Court, however. The issue is not whether the proposed treatment is permissible, but rather whether Westpark's Plan may provide such different treatment for members of the same class. Section 1123(a)(4) of the Bankruptcy Code permits a plan to provide less favorable treatment for particular interests in a class only if such less favored interests consent. The Limited Partners clearly have not consented to this less favorable treatment.

The Court makes no finding whether the proposed treatment of Limited Partner interests under Westpark's Plan is permissible under 11 U.S.C. § 1129(b) if the interests of CII and the Limited Partners are classified separately. The Court finds only that Westpark's Plan proposes to treat the interests of the Limited Partners differently and less favorably than the interests of CII. Therefore, those interests may not be placed in the same class without the consent of the Limited Partners. 11 U.S.C. § 1123(a)(4). The Limited Partners do not consent and, thus, Westpark's Plan may not be confirmed as proposed. Accordingly, the Limited Partners' objection is sustained on the classification issue. 11 U.S.C. § 1123(a)(4) and § 1129(a)(1).

### C. Feasibility Of The Plan

■ The Limited Partners argue that Westpark is without authority to change the partnership agreement over the Limited Partners' objections and the Plan, therefore, is not feasible under 11 U.S.C. § 1129(a)(11) and § 1123(a)(5). The Limited Partners presented no authority for this undeveloped assertion by its counsel. Therefore, any decision whether the partnership agreement may be amended over the objection of limited partners will wait until such issue is more squarely before the Court with an opportunity for all affected parties to argue their respective positions.

Finally, the Limited Partners contend that the Plan is not feasible without the Limited Partners' additional contributions which will not be forthcoming. Westpark's response to that concern is that funds will be available from other sources.

A representative of CII testified that, despite the Limited Partners' failure to purchase new Class A Units, the Plan remains feasible. That representative further testified that CII has agreed to loan

Westpark $15,000 if necessary.[2] Subsequently, Westpark, CII and American Charter filed an agreed modification to the Plan to reflect this arrangement. The testimony indicated that funds from CII would fund any payments under the Plan required to be made within sixty days of the effective date.

The Court also reviewed the monthly operating reports of Westpark. Based upon the testimony and the operating reports, the Court finds the Westpark's Plan, as modified, is feasible. If funds are made available from CII, Westpark can fund the short-term requirements of the Plan. Further, despite the recent downturn in performance, the operating history of this project generally demonstrates its capability. Therefore, the objection of the Limited Partners relating to feasibility is overruled.

### IV. *Conclusion*

The Court finds that, if the loan from CII is approved by the Court, Westpark's Plan is feasible. Therefore, the Limited Partners' objection relating to the feasibility of Westpark's Plan is overruled.

The Court further finds, however, that the Plan places the interests of CII and the Limited Partners in the same class, but does not treat these interests in the same manner. Such classification violates 11 U.S.C. § 1123(a)(4). Accordingly, the Limited Partners' objection to this differing treatment for members of the same class is sustained.

Based upon the foregoing, confirmation of Westpark's Plan is hereby denied.

IT IS SO ORDERED.

---

**2.** CII is also operating under the provisions of Chapter 11 before this Court. Before any loan can be made to Westpark, it must be approved by the Court.